1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

AMAZON.COM, INC., a Delaware
corporation; and SALVATORE
FERRAGAMO S.P.A., an Italian
corporation,

Plaintiffs,

v.

GUOXIN DAI, an individual d/b/a Selling
Accounts: Zhaoha032ojun and
Cangzhoushuofengdianzikejizzx; and DOES
1-10,

Defendants.

Case No. C21-170-RSM

ORDER GRANTING PLAINTIFFS'
MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION
AGAINST DEFENDANT GUOXIN DAI

## I.    INTRODUCTION

This matter comes before the Court on Plaintiffs Amazon.com, Inc.'s ("Amazon") and Salvatore Ferragamo S.P.A.'s ("Ferragamo") Motion for Default Judgment and Permanent Injunction Against Defendant Guoxin Dai (the "Motion"). Dkt. #55. Having considered the record in this case, including Defendant Guoxin Dai's failure to appear and the Clerk of Court's entry of an Order of Default (Dkt. # 54), the Court grants Plaintiffs' Motion and enters a permanent injunction against Defendants, as described below.

ORDER - 1

## II.   BACKGROUND

On February 11, 2021, Plaintiffs filed two Complaints alleging identical claims for trademark infringement, false designation of origin and false advertising under the Lanham Act, and violation of the Washington Consumer Protection Act. *Amazon.com, Inc., et al. v. Yong, et al.*, Case No. 2:21-cv-00170-RSM, Dkt. # 1 ¶¶ 49-76; *Amazon.com, Inc., et al. v. Jun, et al.*, Case No. 2:21-cv-00171-RSM, Dkt. #1 ¶¶ 48-75.   In each case, Plaintiffs' claims arose from Defendants' alleged unlawful sale in the Amazon store of counterfeit belts using Ferragamo's registered trademarks without authorization.   On April 29, 2021, the Court granted Plaintiffs' Motion to Consolidate the two cases (Dkt. #17) and on November 11, 2021, Plaintiffs filed a First Amended Complaint for Damages and Equitable Relief (Dkt #28) ("FAC") naming Defendant Guoxin Dai ("Defendant" or "Dai").

The Court also granted Plaintiffs' request to take expedited discovery via third-party subpoenas on financial institutions and email service providers linked to certain Amazon selling accounts that sold counterfeit Ferragamo belts. *Yong*, Dkts.# 12, 15; *Jun*, Dkts. #12, 15. Responses from a payment service provider, Payoneer Inc. ("Payoneer"), confirmed that two of the selling accounts named in the Jun action—(1) zhaoha032ojun ("Zhaoha"), and (2) Cangzhou Shuofeng Electronic Technology Co., Ltd. ("Cangzhou") (together, the "Selling Accounts")— funneled proceeds of their counterfeit sales to a Payoneer account registered by Dai.  Declaration of Scott Commerson, Dkt. #56 ("Commerson Decl.") ¶¶ 2-3; *Yong*, Dkt. 32 ¶¶ 2-3.1.[1]  Based on the discovery linking Dai to the Selling Accounts, Plaintiffs amended the *Jun* Complaint to name Dai.   Dkt. #29, FAC ¶ 13.   These subpoena responses did not include the names or other identifying information of the Defendants initially named in the *Yong* or the *Jun* actions,

---

[1] Hereafter, all citations to the docket refer specifically to *Yong*, the lead case in this consolidated matter.

Plaintiffs believe that Dai used false information and documentation to mislead Amazon during the selling account registration process. *See* Dkt #55 at 2, n.1 (citing Dkt. #42 at 5, n. 4, 5). Accordingly, Plaintiffs dismissed the originally-named Defendants. Dkt. #50.

Defendant was believed to reside at an unknown location oversees, likely China, and conduct their business through the internet. Dkt. #42. Because Plaintiffs were unable to serve Dai by conventional means; and email service was the most likely means to provide actual notice of this lawsuit to Dai because Dai registered certain email addresses with Amazon that have been used as the primary means of communication from Amazon to Dai, in April 2023, Magistrate Judge S. Kate Vaughan granted Plaintiffs' Motion to complete service of process by registered email on Defendant Dai. Dkt. #51. On April 28, 2023, Plaintiffs filed proof of service on Dai by registered email. Dkt. #52.

Dai has not filed or served an answer, appeared in this action, contacted Plaintiffs' counsel, or otherwise demonstrate any intention to participate in Plaintiffs' action. Commerson Decl. ¶ 4. Accordingly, on June 7, 2023, the Clerk entered an Order of Default against Defendant. Dkt. #54. Plaintiffs now move for default judgment under Federal Rule of Civil Procedure 55(b) and Local Rule 55(b). Dkt. #55.

### III.    DISCUSSION

The Court has personal jurisdiction over Defendant Dai because, taking the factual allegations in the FAC as true, Dai entered into an ongoing contractual relationship with a Washington State company, Amazon, and then violated that contractual relationship by selling counterfeit products using Amazon as its sales platform to Washington States residents. Dkt. #55 at 4–5; FAC ¶¶ 31–43. Therefore, Defendants "should reasonably anticipate being haled into court" in this state. *See Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir. 1990). The Court

ORDER - 3

has specific jurisdiction because Defendants' "contacts with the forum give rise to the cause of action before the court." *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001). The court also has subject matter jurisdiction over Plaintiffs' claims. *See* 28 U.S.C. §§ 1331, 1332, 1338, 1367.

### A. Default Judgment

Given the entry of default in this case, the Court may use its discretion to enter a default judgment under Federal Rule of Civil Procedure 55(b) and Local Rule 55(b). When examining the merits of a default judgment, the Court takes well-pled allegations in a complaint as true. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). Though default judgments are "ordinarily disfavored," the Court analyzes seven factors to determine whether default judgment is appropriate. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Those seven factors are:

> (1) the possibility of prejudice to the plaintiff,
> (2) the merits of plaintiff's substantive claim,
> (3) the sufficiency of the complaint,
> (4) the sum of money at stake in the action,
> (5) the possibility of a dispute concerning material facts,
> (6) whether the default was due to excusable neglect, and
> (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* (punctuation edited.)

In applying this test, the Court finds Plaintiffs' FAC to be well-pled and therefore takes its allegations as true.

### (1) Possibility of prejudice to Plaintiffs

In looking at the first *Eitel* factor, the Court finds that without a default judgment there is great possibility of prejudice to Plaintiffs. Defendant has not appeared and cannot be

physically located.  Therefore, without a default judgment Plaintiffs will have no remedy.  *See Criminal Prods., Inc. v. Gunderman*, 2017 WL 664047, at \*3 (W.D. Wash. Feb. 17, 2017).

**(2) Merits of Plaintiffs' substantive claims; and**

**(3) Sufficiency of the complaint**

The second *Eitel* factor, which concern the merits of the claim, is "often analyzed together" with the third *Eitel* factor, the sufficiency of the complaint.  *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014).  Here, after analyzing each claim in Plaintiffs' FAC, the Court finds that *Eitel* factors two and three support default judgment.

### a.  *Trademark Infringement (Claim One)*

Plaintiffs' first claim is for trademark infringement, which requires Plaintiffs to demonstrate that Defendants used:

> (1) a reproduction, counterfeit, copy or colorable imitation of plaintiff's registered trademark, (2) without its consent, (3) in commerce, (4) in connection with the sale, offering for sale, distribution or advertising of any goods, (5) where such use is likely to cause confusion, or to cause a mistake or to deceive.

*Amazon.com v. Kurth*, 2019 WL 3426064, at \*2 (W.D. Wash. July 30, 2019) (citing 15 U.S.C. § 1114(a)).  "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks."  *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). "Commerce" under the Lanham Act is broadly defined as "all commerce which may lawfully be regulated by Congress," (15 U.S.C. § 1127), which includes conduct having an effect on interstate sales in the United States.  *Steele v. Bulova Watch Co.*, 344 U.S. 280, 256 (1952);  *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 613 n.7 (9th Cir. 2010) (citing *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 426 (9th Cir. 1977)).

Taking the allegations in the FAC as true, Ferragamo owns the Ferragamo Trademarks. Products Amazon test-purchased from the Selling Accounts under the control of Dai were counterfeit imitations of Ferragamo-based products bearing the Ferragamo Trademarks without authorization.  This likely confused Plaintiffs' customers.  Therefore, allegations in the Complaint, taken as true, establish Plaintiffs' trademark infringement claim.

### b.  *False Designation of Origin and False Advertising (Claims Two and Three)*

Plaintiffs' second and third claims are for false designation of origin and false advertising under 15 U.S.C. § 1125(a).  To establish a claim under this statute, plaintiffs must show that defendants "(1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *Luxul Tech. Inc. v. Netarlux*, LLC, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015) (citing *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902-04 (9th Cir. 2007)).  "Because counterfeit marks are, by design, 'inherently confusing, ... if the plaintiff presents evidence demonstrating an allegedly infringing mark is counterfeit, then a strong likelihood of confusion is established." *Coach, Inc. v. Pegasus Theater Shops*, No. C12-1631-MJP, 2013 WL 5406220, at *3 (W.D. Wash. Sept. 25, 2013) (quoting *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003)).  Although Ferragamo is the trademark holder in this case and not Amazon.com, under § 1125(a), " 'any person who believes that he or she is likely to be damaged' by a defendant's false advertising" may sue.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014).

The FAC alleges that both Ferragamo and Amazon were damaged when Dai sold counterfeit imitations of Ferragamo-branded products bearing the Ferragamo Trademarks using

Amazon's platform.   Such actions undermine trust in both companies and diminish their reputations.   The Complaint further alleges that Defendants falsely advertised and falsely designated the origin of the counterfeit products they sold on Amazon by using the Ferragamo Trademarks. Such false advertisement and false designation of origin is likely to cause confusion. Therefore, allegations in the Complaint, taken as true, establish Plaintiffs' false designation of origin and false advertising claims.

### c.   *Violation of the Washington Consumer Protection Act (Claim Four)*

Plaintiffs' fourth claim is for violation of the Washington Consumer Protection Act (CPA).  In a claim under the CPA, plaintiffs must "(1) an unfair or deceptive act or practice; (2) occurring in the conduct of trade or commerce; (3) affecting the public interest; (4) injuring its business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered."  *BBC Grp. NV LLC v. Island Life Rest. Grp. LLC*, 2020 WL 758070, at *2 (W.D. Wash. Feb. 14, 2020).  "Absent unusual circumstances, the analysis of a CPA claim will follow that of the [federal] trademark infringement and unfair competition claims; it will turn on the likelihood of confusion regarding a protectable mark." *Safeworks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d 1181, 1192 (W.D. Wash. 2010).

Because analysis of a CPA claim tracks that for a federal trademark claim, and there do not appear to be any unusual circumstances dictating a different result, Plaintiffs have already demonstrated the basis for their CPA claim.  Defendant Dai deceptively sold counterfeit Ferragamo-branded products on Amazon, which harms the public's interest in authentic products and injures Plaintiffs' businesses. *See Amazon.com, Inc. v. Sirowl Tech.*, No. C20-1217-RSL-JRC, 2022 WL 19000499, at *3 (W.D. Wash. Oct. 3, 2022); *Amazon.com v. White*, No. C20-

1773-JHC, 2022 WL 1641423, at *4 (W.D. Wash. May 24, 2022).  Therefore, allegations in the

Complaint, taken as true, establish Plaintiffs' CPA claim.

**(4) The sum of money at stake in the action**

The fourth *Eitel* factor is the sum of money at stake.  "In weighing this factor, courts take

into account the amount of money requested in relation to the seriousness of the defendant's

conduct, whether large sums of money are involved, and whether 'the recovery sought is

proportional to the harm caused by defendant's conduct.'"  *Curtis*, 33 F. Supp. 3d at 1212 (quoting

*Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010)).

Plaintiffs are seeking $128,400 in statutory damages.  Dkt. #55 at 14.  Based on the

Declaration of Elaine Haskel,  Senior Risk Manager for the Amazon Counterfeit Crimes Unit,

Dai sold a minimum of $42,764.90 of counterfeit Ferragamo-branded products through his two

Selling Accounts in roughly seven months.  Dkt. #57 ¶¶ 5–7

 The damages sought are three times that plus $105.30.  However, the harms Plaintiffs

experienced are not limited to lost sales.  As discussed above, Plaintiffs also suffered reputational

harm.  Statutory damages serve not only a compensatory purpose but also a deterrent purpose.

*See Amazon.com, Inc. v. Huang Tengwei*, No. C18-1399RSM, 2019 WL 4414957, at *3 (W.D.

Wash. Sept. 16, 2019).  The damages sought by Plaintiffs are commensurate with the harm

caused by Dai's conduct.  This factor therefore supports default judgment.

**(5) The possibility of a dispute concerning material facts**

The fifth *Eitel* factor is the possibility of a dispute concerning material facts.  "When

default has been entered, courts find that there is no longer the possibility of a dispute concerning

material facts because the court must take the plaintiff's factual allegations as true."  *Curtis*, 33

F. Supp. 3d at 1212.  "Where a plaintiff 'has supported its claims with ample evidence, and

defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment.'" *Id.* (quoting *Landstar Ranger, Inc.*, 725 F. Supp. 2d at 922).

Despite being notified of this proceeding, *see* Dkt. #52, Dai has not appeared. The Clerk of Court entered default against Defendant Dai, and Plaintiffs have introduced enough evidence to support their claims. This factor therefore supports default judgment.

**(6) Whether the default was due to excusable neglect**

The sixth *Eitel* factor is whether the default was due to excusable neglect. Defendant Dai was served with the Summons and Complaint almost five months ago and has failed to answer or otherwise appear in this action. There is no evidence that Dai's failure is a result of excusable neglect. This factor therefore supports default judgment. *See Maersk Line v. Golden Harvest Alaska Seafood LLC*, No. C20-1140-JLR-MLP, 2020 WL 6083464, at *4 (W.D. Wash. Sept. 30, 2020), *report and recommendation adopted*, No. C20-1140 JLR, 2020 WL 6077419 (W.D. Wash. Oct. 15, 2020) ("Plaintiff has demonstrated proper service on Defendant, and there is no evidence that Defendant's failure to respond to the complaint is the result of excusable neglect.").

**(7) The strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits**

The final factor considers the strong policy favoring decision on the merits. "Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, given Defendant's non-appearance, there seems to be no reasonable possibility of reaching a decision on the merits. *See Kurth*, 2019 WL 3426064, at *4 ("Because Defendant has failed to appear or respond in this action, a decision on the matters appears unlikely.").

Having considered the *Eitel* factors, the Court finds they support entry of a default judgment for Plaintiffs against Defendant Dai.

**B. Damages**

Plaintiffs have alleged willful conduct by Dai in this counterfeiting scheme, and because Dai has defaulted the Court will take it as true that he acted willfully.  *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008).  This bears on the damages question because Plaintiffs are asking for statutory damages, and the relevant statute states that when there is "willful" use of a counterfeit mark, a Court may award between $1,000 and $2,000,000 in statutory damages per infringed mark.  15 U.S.C. § 1117(c)(2); *see also State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 720 (9th Cir. 2005) ("Section 1117(c) allows a plaintiff to opt for statutory damages in cases involving the use of a counterfeit mark."). Here, Plaintiffs have alleged—and the Court will take as true—that Dai willfully infringed on the Ferragamo Trademarks.  Dkt. #28.  Therefore, statutory damages in this case would be between $2,000 and $4,000,000.

In *Sirowl Tech.*, Plaintiff Amazon.com and KF Beauty showed that Defendants made $406,683 in aggregate sales of counterfeit Wunderbrow products on Amazon.com.  *Sirowl Tech.*, No. C20-1217-RSL-JRC, at *3.  The Plaintiffs then asked for statutory damages under r 15 U.S.C. § 1117(c) in the amount of $1,220,049—equivalent to three times the actual damages that plaintiffs could show.  *Id.*  The *Sirowl Tech.* court found this to be a conservative and reasonable way to simultaneously compensate the Plaintiffs for the damage caused by the Defendants' actions, deter future violations, and punish Defendants' willful trademark violations.  *Id.*

Here, Plaintiffs show that Dai made at least $42,764.90 in aggregate sales of counterfeit products as part of their scheme.  As in *Sirowl Tech.*, Plaintiffs request that this Court multiply

$42,764.90 by three plus $105.30 to obtain statutory damages of $128,400.  Dkt. #55 at 14.
Plaintiffs suggest this amount is conservative and on the low end of the range of damages
available for Defendant's wrongdoing, but it is significant enough to provide deterrence against
future counterfeiting conduct.  *Id.*  This Court agrees.

Therefore, the Court awards Plaintiffs $128,400 in statutory damages.

## C. Permanent Injunction

Plaintiffs ask this Court to enjoin Defendant, "his agents, representatives, servants,
employees, successors, and assigns and all others in active concert or participation with them"
from:

(a) selling counterfeit or infringing products in Amazon's stores;
(b) selling counterfeit or infringing products to Amazon or any Amazon affiliate;
(c) manufacturing, importing, distributing, offering to sell, or selling any product using
    Ferragamo's brand or trademarks, or which otherwise infringes Ferragamo's
    intellectual property, in any store or in any medium; and;
(d) assisting, aiding, or abetting any other person or business entity in engaging in or
    performing any of the activities listed in (a) through (c) above.

Dkt. #55 at 15.

It is within this Court's power, under 15 U.S.C. § 1116(a), to "grant injunctions according
to principles of equity and upon such terms as the court may deem reasonable" in order to prevent
trademark violations.  *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1137 (9th Cir.
2006).  The Washington Consumer Protection Act also allows permanent injunctions to prevent
violations.  *See* RCW 19.86.090.  When deciding whether to grant permanent injunctions, courts
are engaging in "an act of equitable discretion" and must apply "traditional equitable principles"
embodied in a four-factor test.  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).
Under that that test, a plaintiff must demonstrate:

(1) that it has suffered an irreparable injury;
(2) that remedies available at law, such as monetary damages, are inadequate to
    compensate for that injury;

ORDER - 11

(3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

(4) that the public interest would not be disserved by a permanent injunction.

*Id.* at 391.

### (1) Irreparable injury

First, Plaintiffs must show that they have suffered an irreparable injury. "[O]nce infringement is shown, irreparable injury is generally presumed in a trademark case." *T-Mobile USA, Inc. v. Terry*, 862 F. Supp. 2d 1121, 1133 (W.D. Wash. 2012); *see also* 15 U.S.C. § 1116 ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction"). The Court therefore presumes irreparable injury and does not find any evidence rebutting such a presumption in the record before it. Further, Dai's failure to appear suggests that Defendant will continue to infringe on the Ferragamo Trademarks, thus compounding the irreparable injury to Plaintiffs' business, market, reputation, and goodwill. *See Sirowl Tech.*, No. C20-1217-RSL-JRC, 2022 WL 19000499 at *5 (citing *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000) (stating that harm resulting from lost profits and lost goodwill is irreparable, and stating that defendants' failure to appear indicates that defendants will likely continue to infringe)).

### (2) Adequacy of legal remedies

Second, Plaintiffs must show that legal remedies are inadequate to compensate for their injury. "Harm resulting from lost profits and lost customer goodwill is ... neither easily calculable, nor easily compensable and is therefore an appropriate basis for injunctive relief." *Bidder's Edge, Inc.*, 100 F. Supp. 2d at 1066. While Plaintiffs can aggregate Dai's sales of counterfeit products on Amazon, the harm to Plaintiffs' reputation and goodwill is hard to quantify. Further, as noted above, Dai's failure to appear suggests that Defendant is likely to

ORDER - 12

continue with his counterfeiting.  Without a permanent injunction, Plaintiffs would need to file new lawsuits to address such behavior.  *See Cont'l Airlines, Inc. v. Intra Brokers, Inc.*, 24 F.3d 1099, 1104-05 (9th Cir. 1994) ("[T]he multiplicity of suits necessarily to be engendered if redress was sought at law, all establish the inadequacy of a legal remedy and the necessity for the intervention of equity." (quoting *Bitterman v. Louisville & Nashville R.R. Co.*, 207 U.S. 205, 225 (1907))).  The Court is satisfied that monetary damages alone are insufficient to deter Defendant's conduct.  *See Amazon.com Inc. v. Robojap Techs. LLC*, No. C20-694 MJP, 2021 WL 5232130, at *4 (W.D. Wash. Nov. 10, 2021).

**(3) Balance of hardships**

Third, Plaintiffs must show that considering the balance of hardships between the parties, a remedy in equity is warranted.  Defendant has no legitimate interest in counterfeiting Ferragamo's products and selling them on Amazon's platform. *See T-Mobile USA, Inc.*, 862 F. Supp. 2d at 1133-34 ("[T]he balance of hardships weighs strongly in T-Mobile's favor.... Defendant has no legitimate interest in using and selling T-Mobile's proprietary codes.").  The balance of hardships therefore weighs in favor of Plaintiffs.

**(4) Public interest**

Finally, Plaintiffs must show that the public interest would not be disserved by a permanent injunction.  "[I]njunctive relief serves the public interest by protecting the rights of trademark holders against infringement and also minimizing consumer confusion." *Treemo, Inc. v. Flipboard, Inc.*, 53 F. Supp. 3d 1342, 1368 (W.D. Wash. 2014) (citing *Brookfield Comms., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999)).  Entering an injunction here will serve the public interest by protecting consumers from unwittingly purchasing counterfeit products.

Considering the above factors, the Court concludes that a permanent injunction is appropriate.

However, Plaintiffs' proposed injunction is overbroad. This iteration has apparently been modified from earlier, "overbroad" proposed permanent injunctions that Amazon and various consumer goods sellers who have been victims of counterfeit goods sales on Amazon.com have submitted in the Western District of Washington. *See Sirowl Tech.*, No. C20-1217-RSL-JRC, 2022 WL 19000499, at *6 (W.D. Wash. Oct. 3, 2022) ("[P]laintiffs' proposed injunction is overbroad."); *id.* at Dkt. #25-1 (Plaintiffs' proposed injunction); *see also White*, No. C20-1773-JHC, 2022 WL 1641423, at *7 ("[T]he injunction plaintiffs seek is overbroad."); *id.* at Dkt. #25-1 (Plaintiffs' proposed injunction); *Kurth*, No. C18-353-RAJ, 2019 WL 3426064, at *6 ("This request is far too overbroad given the evidence before the Court and does more than remedy the specific harm at issue."); *id.* at Dkt. # 12-1 (Plaintiffs' proposed injunction). While in this case, Plaintiffs do incorporate some of the modifications made by the *White* and *Kurth* courts—namely, limiting clauses (b) and (c) to "counterfeit or infringing products"—Plaintiffs' proposed injunction is still overbroad.[2]

To address Plaintiffs' overbroad proposed injunction, the Court strikes Plaintiffs' proposed language enjoining defendants' "officers, agents, representatives, servants, employees, successors, and assigns, and all others in active concert or participation with him." Instead, the

---

[2] In *White*, Amazon and its fellow Plaintiff sought to enjoin the Defendants from "(i) selling products in the Amazon store; (ii) selling products to Amazon or any affiliate; (iii) opening or attempting to open any Amazon Selling Accounts." *White*, No. C20-1773-JHC, 2022 WL 1641423, at *7. The court ruled that Items (i) and (ii) should be limited to counterfeit products, and item (iii) should be stricken. *Id.* In *Kurth*, Amazon and its fellow Plaintiff sought to enjoin the Defendant from "opening any Amazon Seller Accounts or otherwise selling products on any of Amazon's websites." *Kurth*, No. C18-353-RAJ, 2019 WL 3426064, at *6. The court struck this provision, stating, "This request is far too overbroad given the evidence before the Court and does more than remedy the specific harm at issue." *Id.* (citing *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004)). In *Sirowl Tech.*, *White* and *Kurth*, the injunctions were limited to the defendants. *See Sirowl Tech.*, No. C20-1217-RSL-JRC, 2022 WL 19000499, at *6 (W.D. Wash. Oct. 3, 2022); *White*, No. C20-1773-JHC, 2022 WL 1641423, at *8; *Kurth*, No. C18-353-RAJ, 2019 WL 3426064, at *5.

Court enjoins only those against whom the clerk entered an Order of Default: Defendant Guoxin Dai. Dkt. # 54.  With that modification—which prevents redundancy with injunction paragraph (d), and also prevents going beyond remedying the specific harm at issue, *see Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004)—a permanent injunction is appropriate.

## IV.    CONCLUSION

For all the foregoing reasons, the Court GRANTS Plaintiffs' Motion for Default Judgment and Permanent Injunction Against Defendant Guoxin Dai (Dkt. #55):

1) The Court awards Plaintiff Ferragamo statutory damages in the amount of $128,400 based on the Court's findings regarding Defendant's willful violations of the Lanham Act;

2) The Clerk is directed to enter judgment against Defendant and in favor of Plaintiffs for the amount set forth above;

3) Defendant Guoxin Dai is hereby permanently ENJOINED AND RESTRAINED from:

   a. selling counterfeit or infringing products in Amazon's stores;

   b. selling counterfeit or infringing products to Amazon or any Amazon affiliate;

   c. manufacturing, importing, distributing, offering to sell, or selling any product using Ferragamo's brand or trademarks, or which otherwise infringes Ferragamo's intellectual property, in any store or in any medium; and

   d. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities listed in (a) through (c) above.

4)  The Court hereby retains jurisdiction over this case for the purpose of enforcing this Order and Injunction, and for any supplemental proceedings that may be authorized by law.

5)  Plaintiffs' counsel is hereby directed to serve a copy of this Order and Injunction on Defendant Dai's last known email address(es) registered with Amazon, which Plaintiffs used to complete service.


DATED this 26th day of September, 2023.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER - 16